McCoy v. Hughes.

# McCoy v. Hughes.

Where M. and H. each claimed eighty acres of land, agreeably to original claim lines, and it appearing by preponderance of proof, that H. made an arrangement with M., by which the latter was to purchase the eighty acres at the land sales; that H. offered him a sum of money equal to his portion of it, but M. declined receiving it, saying he had money enough, that he would purchase the land, and call for the money when he wanted it; that M. purchased the land accordingly in his own name, and H. depending upon the arrangement with him, made valuable improvements upon his portion of it, within the presence and knowledge of M., who had both before and since the purchase recognized the right of H., and had expressed a desire to purchase his portion of the eighty acres; and that H. had also tendered the amount of the purchase-money and interest, since the purchase and before this suit was commenced, with a deed for M. to execute, but he refused to receive the one or execute the other. Held, that as H. had deposited the amount of the purchase-money and interest in court for M., that the former was entitled to a decree against the latter for the portion of the land which he had originally claimed; also held, that H. was entitled to this recovery, although the facts proved did not fully come up to the facts alleged in his bill; also held, that the facts established would take the case out of the statute of frauds for the advancement of equity; and also held, that M. might properly be regarded as agent or trustee of H. in the transaction.

McCoy *v.* Hughes.

In Equity.    *Appeal from Henry District Court.*

*C. Walker* and *W. H. Wallace,* for the appellant.    Mr.
Walker submitted the following authorities :   1. That the ar-
rangement between the parties did not amount to a contract to
convey. 2 Story's Equity, § 751.    2. That the transaction can-
not be taken out of the statute of frauds.    2 Story's Equity,
§§ 980, 1195, 1198, 1201.    3. That complainant should not re-
cover, because he does not offer in the bill to pay purchase-money.
*Libert* v. *Kelly,* 6 Monr. 673; *Clark* v. *Hall,* 7 Paige, 382.

*Hall* and *Mason,* for the appellee, cited 2 Story's Equity,
62, 69, 740 ; 14 John. 32 ; 1 John. Ch. R. 284 ; 2 *ib.* 339,
369 ; 1 Blackf. 294 ; 2 Cowen and Hill's Notes, pp. 287, 340,
350 ; 1 Paige, 212 ; 9 John. 466 ; 1 Rand. 169.

*Opinion by* Greene, J.    The bill in this case states, that
in March, 1839, the complainant, Hughes, bought a claim and
made valuable improvements thereon ; a part of which were
on the west half of north-west quarter of section nine, town-
ship seventy-one, north of range six, west : that such claims
were recognized by the community as giving the claimant a
right to purchase at the land sales : that the claim, having
been made prior to the survey of public lands, was not bound-
ed according to the congressional subdivisions ; but by amica-
ble arrangement the claims were to be preserved as originally
made, by one claimant purchasing the land by legal subdivi-
sions, and deeding subsequently to the meritorious claimants ;
that complainant made an arrangement with the defendant,
McCoy, by which he was to purchase the said tract of land,
and then deed to complainant the amount embraced within his
claim, and at the same time offered him a sum of money suf-
ficient to pay for said amount ; that McCoy did not receive the
money, stating that it made no difference, as he had money
enough ; that he would purchase the land, and if he wanted
the money he would call for it ; and that he had no claim to
complainant's part of the land, and only wanted his own.    That

soon after the defendant purchased the land, complainant relying upon said arrangement, commenced improving his portion by enclosing it with a fence; that the defendant was present, knew of the improvement, and made no objection, but spoke of the land as complainant's, and desired to purchase it of him; that at the same time he promised to make a deed to complainant for his share of the land. The bill also alleges that complainant had tendered him the amount of the entrance-money and interest, and a deed ready for execution, but still the defendant refused to convey the land to him.

The answer expresses ignorance of many of the facts set forth in the bill, but admits a conversation about purchasing the land; still denies that he was to do so only upon the condition that complainant should furnish the money at the land sales, but that it was neither furnished nor offered; denying that after purchasing the land, he agreed to convey to complainant, or called the land his, but admitting that upon one occasion he expressed a desire to buy his good-will of the same, and that a deed was offered for him to sign for complainant, and some money tendered, which he refused. The defendant, in his answer, set up the statute of frauds against the relief asked by the complainant.

The depositions of several witnesses prove that the complainant had made desirable improvements upon the land; and that the defendant had recognized his right to it, both before and since the purchase, and had expressed a desire to buy the land; that he was present when some of the improvements were made, offered no objection, and claimed no right to the land. The testimony also shows that the purchase-money was tendered to defendant before the sale, upon which occasion he said that "it made no difference," and also that the purchase-money and interest had been tendered to him since the land sales.

The district court decreed a conveyance of the land to complainant; the entrance-money and interest having been deposited with the court for the defendant.

The first position assumed by defendant's counsel is, that

McCoy v. Hughes.

the agreement alleged in the bill is not proved as law requires; that the "*allegata et probata*" do not correspond. It is true, that the agreement to purchase and deed the land, as set forth in the bill, is not so fully sustained by testimony as to remove all doubts upon some of the stated facts; but still we think enough is proved to establish an equitable, and in many respects a strong case for complainant. Nor can we see that the facts alleged, and the facts proved, are so materially variant as to justify a reversal of the decree. The objection being one of form rather than of substance, a court of equity will overlook it, and act upon substantial merits. In this case there is clearly no substantial misdescription of the premises, nor material irrelevancy in the proof. All are clearly ascertainable, and sufficiently identified, to justify a court of chancery in enforcing a specific performance. In arriving at this conclusion, we consult not only the peculiar nature of the transaction, common only in frontier and new settlements, and the customs recognized and established in such settlements, but also the relation in which the parties and their interests stood to each other at the time the arrangement was entered into.

2. It is contended that if the contract alleged in the bill is established by proof, it is within the statute of frauds, and void. This objection presents a more serious difficulty in the case. It is obvious that courts of equity are equally bound with courts of law, in the observance of this statute; but it is equally obvious, that for the purpose of administering justice, subservient to the object of the act, equity has interfered in some cases which were within its meaning and restraint. Whether such an interference would be justifiable in this case it is perhaps unnecessary to inquire, especially as the circumstances recited in the bill, and sustained by proof, place the arrangement relied upon beyond the reach of the statute.

A parole contract is often specifically enforced by a court of equity, where there has been a part performance. This the plaintiff sets up, to take the case out of the statute; and al-

McCoy v. Hughes.

leges that this part performance consisted in the defendant's acquiescence in his right and possession; in the valuable improvements the defendant encouraged him to make upon the land in question, and in his efforts to purchase the same. It appears to be within the general course of equitable relief, that where the person who has the legal title to land suffers another to go on with improvements, under the expectation of a conveyance, raised in him by the acts, encouragement, or assurance of the owner, that the transaction will be taken out of the statute of frauds, and the deceiving party be required to make the conveyance, and realize the expectation he has raised. *Parkhurst* v. *Van Cortland*, 14 John. 35; 1 John. Chan. R. 273; Roberts on Frauds, p. 132. It is laid down in Roberts on Frauds, that this encouragement may not only be given by "words and assurances," but simply by "looking on in silence." The preponderance of proof in this case leaves but little doubt that all these inducements were put forth by the defendant, which encouraged the complainant to go on with the improvements. He was not only encouraged by these hopes, but also in the defendant recognizing his right to the soil, by endeavoring to purchase it of him.

It is urged by complainant's counsel, with much reason, that McCoy acted as complainant's agent or trustee in entering the land at the sales. The nature of the transaction; the claim the plaintiff had in the land before the purchase, and his acquiescence in the arrangement to let the defendant enter the same; the confidence he manifested in obtaining the deed, and the general tendency of the proof, give force and weight to this consideration, and show strong instances of encouragement, both tacit and express, to rely upon his equitable right in the land, and to make upon it improvements, and incur expenses. Principles of the soundest morality, sanctioned by the rules of justice and equity, require relief against such fraud, and justify the decree of the court below.

Decree affirmed.